# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION

NO. 7:11-CV-00238-D

| | | |
|---|---|---|
| LTC DONALD SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| | ) | **AND ORDER** |
| STATE OF NORTH CAROLINA, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This cause comes before the Court upon the following motions referred to the undersigned for entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1):

> Defendants' Motions to Dismiss (DE-7, DE-13)
> Plaintiff's Motion to Amend the Complaint (DE-16)
> Defendants' Motions for Sanctions (DE-18, DE-21, DE-45, DE-48)
> Defendants' Motion for Judgment on the Pleadings (DE-42)

In addition, the following motions are referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A):

> Plaintiff's Motion for Sanctions (DE-17)
> Defendants' Motions to Strike (DE-18, DE-25, DE-31, DE-34, DE-40, DE-51, DE-53)
> Plaintiff's Motions to Stay (DE-20, DE-24)
> Plaintiff's Motion for Writ of Mandamus (DE-30)
> Plaintiff's Motion for Hearing (DE-46)
> Plaintiff's Motions for Arrest Warrants (DE-50, DE-52)

These motions are ripe for adjudication. For the reasons stated herein, the undersigned

RECOMMENDS that Plaintiff's motion to amend be denied and that Defendants' motions to dismiss and motion for judgment on the pleadings be granted. The undersigned further RECOMMENDS that the motions for sanctions be granted and that a pre-filing injunction be entered against Plaintiff. The remaining motions are DENIED.

## I.    FACTUAL BACKGROUND

On May 13, 2008, Plaintiff entered the county courthouse in Pender County, North Carolina, openly wearing a holstered, loaded firearm. Compl. ¶ 18, ¶ 19. Defendants Hugh Frasier and Kevin Kemp, both deputies with the Pender County Sheriff's Office, arrested Plaintiff at the courthouse for violation of N.C. Gen. Stat. § 14-269.4[1] and immediately transported him to the Pender County jail, located one-half block away from the courthouse. *Id.* at ¶ 19. At the jail, a magistrate reviewed the information presented by the deputies and released Plaintiff on a $500.00 cash bond. *Id.* at ¶ 20. A jury subsequently found Plaintiff guilty of violating N.C. Gen. Stat. § 14-269.4. *Id.* at ¶ 21.

---

1. N.C. Gen. Stat. § 14-269.4 provides in pertinent part as follows:

> It shall be unlawful for any person to possess, or carry, whether openly or concealed, any deadly weapon, not used solely for instructional or officially sanctioned ceremonial purposes in the State Capitol Building, the Executive Mansion, the Western Residence of the Governor, or on the grounds of any of these buildings, and in any building housing any court of the General Court of Justice. If a court is housed in a building containing nonpublic uses in addition to the court, then this prohibition shall apply only to that portion of the building used for court purposes while the building is being used for court purposes.

There are certain exceptions to this prohibition, none of which apply here. *See, e.g.*, N.C. Gen. Stat. § 14-269.4(4b-4d) (allowing judges and detention officers to carry firearms in courthouse).

Violation of N.C. Gen. Stat. § 14-269.4 constitutes a Class 1 misdemeanor.

Defendant Superior Court Judge Jay Donald Hockenbury presided over the trial, at which Plaintiff represented himself. During trial, Judge Hockenbury did not permit Plaintiff to introduce into evidence copies of the Second Amendment to the United States Constitution, Article 1, Section 30 of the North Carolina Constitution, or legislative research regarding the right to bear arms. *Id.* at ¶¶ 21-23. Plaintiff immediately appealed the jury's verdict following sentencing, and Judge Hockenbury set a $200.00 appeal bond. *Id.* at ¶ 25. Deputy Frasier then escorted Plaintiff from the courtroom, placed him in the front seat of his patrol vehicle, and drove him from the Pender County courthouse to the jail to pay his appeal bond. *Id.* Plaintiff wore handcuffs while in the patrol vehicle. When they reached the jail, the magistrate was unavailable. Plaintiff remained in a holding cell with several other persons he describes as "unsavory" for approximately three hours waiting for the magistrate to accept his appeal bond. *Id.* at ¶ 28.

On appeal, the North Carolina Court of Appeals found no error in Plaintiff's conviction, *see* <u>State v. Sullivan</u>, 202 N.C. App. 553, 691 S.E.2d 417 (2010), and the Supreme Court of North Carolina and the United States Supreme Court denied Plaintiff's petitions for review, *see* 364 N.C. 331, 701 S.E.2d 673 (2010), *cert. denied*, 131 S. Ct. 1053 (2011). *Id.* at ¶ 29.

Based on these allegations, Plaintiff now brings claims pursuant to 42 U.S.C. § 1983 for asserted violations of his constitutional and civil rights. In addition, Plaintiff seeks to recover actual and punitive damages for false arrest, false imprisonment, gross negligence, and mental anguish. Plaintiff also requests injunctive relief. Specifically, Plaintiff seeks "an order providing for the elimination of similar false imprisonment where no threat against life or property, or to the peace, has been observed," Compl. ¶ 55, as well as "an order providing for sanctions against any member of the judiciary failing to administer the

3

proper oath to any officer of the court as provided by statutory and constitutional law." *Id.* at ¶ 62. Plaintiff pursues his claims against all defendants acting in their official and individual capacities.

The State of North Carolina, Judge Jay Donald Hockenbury, and Clerk of Court Robert Kilroy ("State Defendants") ask the Court to dismiss Plaintiff's complaint pursuant to Rules 12(b)(1), (2), (5) and 12(b)(6). (DE-7). Alternatively, the State Defendants seek judgment on the pleadings pursuant to Rule 12(c). (DE-42). The Pender County Sheriff's Department, Carson Smith, Hugh Frasier, and Kevin Kemp ("County Defendants") also seek dismissal pursuant to Rule 12(b)(6). (DE-13).

## II. **LEGAL STANDARDS**

### A. **Rule 12(b)(6)**

Defendants seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a plaintiff must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The facts alleged must "raise a right to relief above the speculative level," *id.* at 555, and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

4

statements do not suffice." *Id.* A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 1950. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with" a defendant's liability, <u>Twombly</u>, 550 U.S. at 557, fail to nudge claims "across the line from conceivable to plausible." *Id.* at 570.

## B. Judgment on the Pleadings

Alternatively, the State Defendants seek judgment on the pleadings. Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is designed to dispose of cases when the material facts are not in dispute; therefore, the court can decide the case on its merits by considering the pleadings along with any materials referenced in or attached to the pleadings that are incorporated by reference. *See id.* 10(c), 12(c). A court may also consider "documents incorporated into the [pleadings] by reference, and matters of which a court may take judicial notice." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007); *see also* <u>Thompson v. Greene</u>, 427 F.3d 263, 268 (4th Cir. 2005). The same standard of review applied to a motion to dismiss under Rule 12(b)(6) also applies to a motion for judgment on the pleadings under Rule 12(c). *See* <u>Burbach Broad. Co. of Del. v. Elkins Radio Corp.</u>, 278 F.3d 401, 405-06 (4th Cir. 2002).

## C. Pro Se Pleadings

Plaintiff is proceeding in this action pro se. The standard used to evaluate the sufficiency of the pleading is flexible, and a pro se complaint, however inartfully pled, is held to less stringent standards than formal pleadings drafted by attorneys. *See* <u>Erickson</u>

v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  *Erickson*, however, does not undermine the "requirement that a pleading contain 'more than labels and conclusions.'"  Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); *see also* Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

### D. 42 U.S.C. § 1983

Plaintiff brings his complaint pursuant to Section 1983 of Title 42 of the United States Code.[2]  *See* 42 U.S.C. § 1983.  Although not a source of substantive rights itself, Section 1983 creates a species of tort liability and provides "a method for vindicating federal rights elsewhere conferred."  Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979).  To state a claim under Section 1983, a plaintiff must allege sufficient facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States, and that this deprivation resulted from conduct committed by a "person acting under color of state law." West v. Atkins, 487 U.S. 42, 49 (1988).

To recover money damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must show that the underlying conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus.  *See* Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  Otherwise, a convicted defendant would be able to collaterally attack his criminal conviction through the vehicle of a civil suit.  *Id.* at 484-85.  "A district court must undertake a case specific analysis to determine whether success on the claims would necessarily imply the invalidity of a

_____

2. Plaintiff also purports to bring his claims pursuant to 18 U.S.C. § 241.  Section 241, however, is a criminal statute and does not provide a civil remedy.  *See, e.g.*, Yagoda v. Davis, No. 7:11-CV-122-BO, 2011 U.S. Dist. LEXIS 100075, at *3 (E.D.N.C. Sept. 5, 2011).

conviction or sentence." Thigpen v. McDonnell, 273 F. App'x 271, 272 (4th Cir. 2008) (per curiam) (unpublished).

With these legal precepts in mind, the undersigned considers Plaintiff's claims.

III.   **ANALYSIS**

The undersigned finds that Plaintiff's complaint fails to state any claim upon which relief may be granted and should be dismissed pursuant to Rule 12(b)(6).  Alternatively, Plaintiff's complaint may be dismissed under Rule 12(c).

A.  **Sovereign Immunity**

The Eleventh Amendment recognizes the sovereign immunity of the States as a limitation on the judicial power granted under Article III of the United States Constitution. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 15 (1890)).  The amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Thus, by its express terms, the Eleventh Amendment prevents the federal courts from hearing cases brought against a State by citizens of another State.   But the Supreme Court has interpreted it to bar as well suits against a State by its own citizens.   Pennhurst, 465 U.S. at 98 (citing Hans, 134 U.S. at 15).   This immunity extends to "arm[s] of the State," Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977), including state agencies and state officers acting in their official capacity, Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995).   A State may waive its sovereign immunity against suit in federal court, but such waiver must be

7

unequivocally expressed. <u>Pennhurst</u>, 465 U.S. at 99. Here, there is no indication of any such waiver by the State of North Carolina. Thus, Plaintiff may not recover damages against North Carolina, Judge Hockenbury, and Clerk of Court Kilroy in their official capacities because the Eleventh Amendment bars claims for money damages against a North Carolina official who is sued in an official capacity. *See* <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989).

Because the State of North Carolina is immune to Plaintiff's suit, the undersigned RECOMMENDS that Plaintiff's complaint against the State of North Carolina be dismissed. The undersigned further RECOMMENDS that Plaintiff's complaint against Judge Hockenbury and Clerk of Court Kilroy acting in their official capacities be dismissed.

## B. <u>Judicial Immunity</u>

Judicial immunity also bars Plaintiff's complaint against Judge Hockenbury. Section 1983 grants absolute immunity to state and local judges for their judicial acts. *See* <u>Dennis v. Sparks</u>, 449 U.S. 24, 27 (1980); *see also* <u>Mireles v. Waco</u>, 502 U.S. 9, 11-12 (1991) (judges are immune from civil suit for actions taken in their judicial capacity, unless "taken in the complete absence of all jurisdiction"); <u>Stump v. Sparkman</u>, 435 U.S. 349, 359 (1978) ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.").

> There is no such immunity, of course, if the judge undertakes to act in an area where he has no subject matter jurisdiction, but it is immaterial that his challenged judicial act may have been unauthorized by the laws which

8

govern his conduct. If he exceeds his authority, his action is subject to correction on appeal or other authorized review, but it does not expose him to a claim for damages in a private action, or put him to the trouble and expense of defending such an action.

Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985). "[T]he doctrine of judicial immunity is only overcome when a judge's actions are not taken in his judicial capacity or when they are taken in the complete absence of all jurisdiction." Murphy v. Goff, No. 6:10-CV-00026, 2010 U.S. Dist. LEXIS 56119, *9 (W.D. Va. June 7, 2010).

In the case at bar, Plaintiff does not allege Judge Hockenbury lacked jurisdiction over his trial, or that the judge acted outside his judicial capacity in any manner. Thus, Judge Hockenbury has judicial immunity from Plaintiff's claims and the complaint against him should be dismissed for this reason. The undersigned therefore RECOMMENDS that Plaintiff's complaint against Judge Hockenbury be dismissed.

## C. **Quasi-Judicial Immunity**

The doctrine of quasi-judicial immunity likewise bars recovery against Clerk of Court Kilroy. Court clerks are accorded derivative absolute immunity when they act in obedience to judicial order or under the court's direction. *See, e.g.*, Pink v. Lester, 52 F.3d 73, 77 (4th Cir.1995); McCray v. Maryland, 456 F.2d 1, 5 (4th Cir. 1972). Here, there are no allegations Clerk of Court Kilroy did anything other than act in aide of and on behalf of the court.[3] The doctrine of quasi-judicial immunity therefore shields him from suit, and Plaintiff's claims against him should be dismissed on this ground. *See* Hedgepeth v.

---

3. Other than to generally complain that Defendant Kilroy failed to supervise or train judicial officers and administer the proper oath for swearing jurors, *see* Compl. ¶ 58, the complaint is devoid of specific factual allegations against Defendant Kilroy and could be dismissed on this basis alone. Even reading Plaintiff's conclusory statements as factual allegations, however, the complaint fails to state any claim against Defendant Kilroy not barred by quasi-judicial immunity.

9

<u>Wilkes C.</u>, No. 3:12-CV-262-RJC, 2012 U.S. Dist. LEXIS 80179, at *14-16 (W.D.N.C. June 11, 2012) (dismissing plaintiff's section 1983 claims against county clerk in her official and individual capacities based on quasi-judicial immunity). The undersigned therefore RECOMMENDS that Plaintiff's complaint against Clerk of Court Kilroy be dismissed.

### D.  **County Defendants**

Plaintiff's claims against the County Defendants also lack merit and should be dismissed. First, Plaintiff's claims against the Pender County Sheriff's Department fail as a matter of law because the sheriff's department does not have the legal capacity to be sued. *See, e.g.*, <u>Craddock v. Beaufort County Sheriff Dep't</u>, No. 4:09-CV-92-D, 2011 U.S. Dist. LEXIS 110998, at *36 (E.D.N.C. Sept. 26, 2011) (explaining that there is no statute authorizing suit against a North Carolina county's sheriff's department); <u>Parker v. Bladen County</u>, 583 F. Supp. 2d 736, 740 (E.D.N.C. 2008) (same). The undersigned therefore RECOMMENDS that Plaintiff's claims against the Pender County Sheriff's Department be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Plaintiff's claims against Sheriff Smith and the deputies in their official capacities must also be dismissed because "North Carolina sheriffs and their deputies are not 'persons' for purposes of 42 U.S.C. § 1983 when they act in their official capacities, and consequently such suits against them are barred by the Eleventh Amendment." <u>Sears v. Cox</u>, No. 7:94-CV-61-D2, 1995 U.S. Dist. LEXIS 9710, at *7 (E.D.N.C. June 23, 1995) (citing

10

Braswell v. Ellis, No. 5:94-CV-325-D3, 1995 U.S. Dist. LEXIS 1501 (E.D.N.C. Jan. 20, 1995); Edwards v. Sheriff Billy Smith, No. 5:94-CT-24-BR (E.D.N.C. Sept. 22, 1994); and Messick v. Catawba County, 110 N.C. App. 707, 431 S.E.2d 489, *disc. rev. denied*, 334 N.C. 621, 435 S.E.2d 336 (1993)).   There is no allegation here of waiver of immunity by Sheriff Smith or his deputies.   The undersigned therefore RECOMMENDS that Plaintiff's claims brought against Sheriff Smith, Deputy Frasier, Deputy Kemp, and the two "Doe" deputies in their official capacities be dismissed.

As for the claims against Sheriff Smith in his individual capacity, Plaintiff does not allege Sheriff Smith was personally involved in any of the events surrounding his arrest, detention, or trial.   However, for purposes of a section 1983 claim, a plaintiff may proceed against an official in his supervisory capacity by showing an "affirmative link" between the misconduct of the subordinate employees and the actions or inactions of the supervisory defendant.   Rizzo v. Goode, 423 U.S. 362, 371 (1976).   This causal link is necessary because there is no respondeat superior liability under section 1983.   *See, e.g.*, Iqbal, 129 S. Ct. at 1948-49.

To establish supervisory liability under section 1983, a plaintiff must establish three things:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury

suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); *see* Iqbal, 129 S. Ct. at 1949. The subordinate's conduct must be "pervasive," meaning that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by subordinate poses an unreasonable risk of harm of constitutional injury." Shaw, 13 F.3d at 799. Thus, a constitutional violation is necessary in order for a plaintiff to state a claim against a supervisory defendant, but it is not sufficient. *See, e.g.*, Waybright v. Frederick County, 528 F3d 199, 203-04 (4th Cir. 2008). To state a claim of supervisory liability against Sheriff Smith, then, Plaintiff must allege sufficient facts to show that the deputies violated Plaintiff's constitutional rights.

In the instant case, Plaintiff's claims of constitutional injury arise from his alleged false imprisonment and false arrest. However, the facts as alleged by Plaintiff demonstrate that he was neither falsely arrested nor falsely imprisoned. Instead, Plaintiff was arrested on May 13, 2008 for carrying a loaded firearm in a county courthouse in open violation of N.C. Gen. Stat. § 14-269.4. Plaintiff mistakenly argues he could not be arrested for a misdemeanor criminal offense without a warrant. *See* Maryland v. Pringle, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a . . . misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause"); Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual

12

has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); United States v. McNeill, 484 F.3d 301, 310-11 (4th Cir. 2007) (recognizing rule); *accord* State v. Brooks, 337 N.C. 132, 145, 446 S.E.2d 579, 588 (1994) (holding that officer may make warrantless arrest for misdemeanor committed in his presence).

As Plaintiff committed the offense in the presence of Deputy Frasier, *see* Compl. ¶¶ 18-19, and as he was ultimately convicted of violating N.C. Gen. Stat. § 14-269.4, it is beyond dispute that Deputy Frasier and Deputy Kemp had probable cause to arrest Plaintiff on this charge. As the officers had probable cause to arrest Plaintiff, he fails to state a claim for false arrest or imprisonment arising from his May 13, 2008 arrest.[4] *See, e.g.*, Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974) (holding that "there is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause"); Sears, No. 7:94-CV-61-D2, 1995 U.S. Dist. LEXIS 9710, at *9 ("It is clear that plaintiff's false arrest claim would be precluded by the existence of probable cause to arrest."); *accord* Burton v. City of Durham, 118 N.C. App. 676, 682, 457 S.E.2d 329, 333 ("Existence of probable cause is an absolute bar to a civil rights claim for false arrest."), *cert. denied*, 341 N.C. 419, 461 S.E.2d 756 (1995). Similarly, Plaintiff states no claim for

_____

4. The County Defendants also correctly note that Plaintiff's claims of false imprisonment and false arrest based on the May 13, 2008 arrest are barred by the applicable three-year statute of limitations. *See* N.C. Gen. Stat. § 1-52(13); Staley v. Lingerfelt, 134 N.C. App. 294, 297, 517 S.E.2d 392, 395 (1999); Fayemi v. Offerman, 99 Fed. Appx. 480, 481 (4th Cir. June 2, 2004) (internal citations omitted) ("There is no statute of limitations provided in § 1983; rather, federal courts apply the forum state's 'most analogous' statute of limitations, generally the statute applicable to personal injury actions. . . . In North Carolina, the statute of limitations for actions under 42 U.S.C. § 1983 (2000) is three years.").

13

false arrest or imprisonment arising from his three-hour detention on November 19, 2008. The facts as alleged show that after being convicted of a criminal offense on November 19, 2008, Plaintiff was transported to the jail and held for three hours until his appeal bond could be processed. During this time, Plaintiff remained under the legal authority of the court pursuant to his criminal conviction. Plaintiff's belief to the contrary notwithstanding, this detention did not constitute a separate arrest.

Because Plaintiff fails to state any facts indicating that his arrest and detention were unlawful or that Deputy Frasier, Deputy Kemp, or the two unnamed "Doe" deputies otherwise violated his constitutional rights, he fails to state a claim against these defendants under 42 U.S.C. § 1983. As he states no viable claim against the deputies, his claim against Sheriff Smith also fails. The undersigned therefore RECOMMENDS that Plaintiff's claims under 42 U.S.C. § 1983 against Sheriff Smith, Deputy Frasier, Deputy Kemp, and the two "John Doe" deputies in their individual capacities be dismissed.

### E. Dismissal Pursuant to *Heck v. Humphrey*

Even if the facts as alleged demonstrated constitutional injury, other independent grounds warrant dismissal of Plaintiff's complaint. Plaintiff's claims arise from his arrest, trial, and criminal conviction of carrying a deadly weapon in a courthouse in violation of N.C. Gen. Stat. § 14-269.4. However, Plaintiff fails to show that this underlying criminal conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. *See* Heck, 512 U.S. at 486-87. If Plaintiff were to successfully demonstrate in a civil suit in federal court that his arrest or trial was improper, such verdict

14

could vitiate the legality of his criminal conviction in state court. For example, Plaintiff contends the jury for his trial was improperly sworn and that the State Defendants thereby violated his constitutional rights. If this Court agreed with Plaintiff, it would necessarily call into question the legality of his state court conviction. Criminal defendants may not, however, collaterally attack their convictions under the guise of a civil suit. *Id.*

Similarly, "federal courts should abstain from the decision of constitutional challenges to a state action . . . 'whenever the federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.'" <u>Cinema Blue of Charlotte, Inc. v. Gilchrist</u>, 887 F.2d 49, 52 (4th Cir. 1989) (quoting <u>Hawaii Housing Authority v. Midkiff</u>, 467 U.S. 229, 237-38 (1984)). The allegations by Plaintiff involve important state interests and clearly could be presented in state judicial proceedings. And indeed, as Plaintiff alleges in his complaint, he appealed his conviction to the North Carolina Court of Appeals, which found no error. The Supreme Court of North Carolina and the United States Supreme Court denied Plaintiff's petitions for review. Absent a showing by Plaintiff that his underlying conviction has been reversed or invalidated in state court, or otherwise thrown into question by the issuance of a writ of habeas corpus, this Court should not allow Plaintiff to challenge the validity of his criminal conviction through the present civil suit. For this reason, the undersigned RECOMMENDS dismissal of Plaintiff's section 1983 claims.

**F. <u>Common Law Claims</u>**

Plaintiff fails to allege sufficient facts in support of his common law claims for false arrest or imprisonment, gross negligence, or mental anguish under state law. These claims should therefore be dismissed pursuant to Rule 12(b)(6).

Under North Carolina law, to prevail on a claim of false imprisonment, a plaintiff must show: (1) the illegal restraint of the plaintiff by the defendant; (2) by force or threat of force; and (3) against the plaintiff's will. *See* Fowler v. Valencourt, 334 N.C. 345, 348, 435 S.E.2d 530 (1993). A false arrest is an arrest without legal authority. Marlowe v. Piner, 119 N.C. App. 125, 129, 458 S.E.2d 220, 223 (1995). Under the North Carolina General Statutes, "[a]n officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense . . . in the officer's presence." N.C. Gen. Stat. § 15A-401(b)(1). As discussed *supra*, under the facts as alleged by Plaintiff, probable cause existed to place him under arrest for carrying a deadly weapon in a county courthouse. His arrest was therefore lawful. Because the allegations fail to show that his arrest or restraint was illegal, Plaintiff does not meet the elements of the offense and therefore fails to show false arrest or imprisonment as a matter of law.

As for Plaintiff's claims of gross negligence and mental anguish, they depend entirely upon the purported illegality of his arrest and detention. North Carolina defines gross negligence as an action done with "'conscious or reckless disregard for the rights and safety of others.'" Yancev v. Lea, 354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001) (quoting Bullins v. Schmidt, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)). Here, Plaintiff's arrest was lawful, and he otherwise fails to state any facts indicating that the Defendants disregarded his rights. Without negligence, Plaintiff's claim for mental anguish[5] does not survive. To state a claim for negligent infliction of emotional distress in North Carolina, a

---

5. The undersigned construes Plaintiff's claim of "mental anguish" as one for negligent infliction of emotional distress.

16

plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress. Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A., 327 N.C. 283, 304-05, 395 S.E.2d 85, 97-98 (1990). The term "severe emotional distress" means "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.* "[M]ere temporary fright, disappointment or regret will not suffice." *Id.*

In the instant case, the facts as alleged are insufficient to state a claim for negligent infliction of emotional distress. Not only does Plaintiff fail to show any negligence by Defendants, he fails to state any facts demonstrating severe emotional distress. Plaintiff alleges only that he "suffered great risk and mental anguish" and was "greatly humiliated" by being initially arrested and then later detained while his appeal bond was processed. Compl. ¶ 35, ¶ 43. Plaintiff does not allege that his arrest and detention caused any "type of severe and disabling emotional or mental condition" as required under North Carolina law. Johnson, 327 N.C. at 304-05, 395 S.E.2d at 97-98. This claim therefore fails as a matter of law.

Accordingly, the undersigned RECOMMENDS that Plaintiff's state common law claims be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

In summary, the undersigned RECOMMENDS that the motions to dismiss (DE-7,

DE-13) be GRANTED.   Alternatively, the undersigned RECOMMENDS that the motion

for judgment on the pleadings (DE-42) be GRANTED.

IV.   **NON-DISPOSITIVE MOTIONS**

A. **Motion to Amend (DE-16)**

Plaintiff seeks to amend his complaint as follows:

1. Correct the description of venue from "Hampstead" to "Burgaw" contained in Item 13;
2. Correct the previously stipulated incorrect description of the initially "unsecured $500.00 bond" contained in Item 20;
3. Add as a claim for relief a request for a Writ of Mandamus as provided for by the North Carolina Court of Appeals in HOLROYD v. MONTGOMERY COUNTY, COA03-1472, requiring the STATE Defendants and the North Carolina Courts, as part of their ministerial duty, to administer the proper jury oath as mandated by law;
4. Add as a claim for relief, in the alternative, a request to issue an injunction requiring the STATE Defendants and the North Carolina courts to administer the proper jury oath as mandated by law; and,
5. More fully define the roles of the STATE parties in the deprivation of my right to a trial by an unfettered jury.

Pl.'s Mot. Amend 2, DE-16.

Rule 15(a) of the Federal Rules of Civil Procedure provides that the court "should

freely give leave [to amend] when justice so requires."   Fed. R. Civ. P. 15(a)(2).

However, a court may deny a party's motion to amend if allowing the amendment would

be futile.   *See* In re PEC Solutions, Inc. Sec. Litig., 418 F.3d 379, 391, 125 Fed. Appx.

490, 499 (4th Cir. 2005) ("Leave to amend need not be given when amendment would be

futile.").   For a motion to amend to be denied for futility, the amendment must be "clearly

insufficient or frivolous on its face."   Johnson v. Oroweat Foods Co., 785 F.2d 503,

510-11 (4th Cir. 1986); *see also* Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 423

(4th Cir. 1990).

In this case, Plaintiff's motion to amend should be denied because allowing such amendment would be futile. Plaintiff's proposed amendment adds nothing to his complaint that could overcome sovereign immunity, substantiate his claims for alleged constitutional violations, or otherwise avoid dismissal of this case. As such, the proposed amendment is clearly insufficient on its face, <u>Johnson</u>, 785 F.2d at 510-11, and the motion to amend should be denied. *See* <u>Satterfield v. W. Va. Dep't of Envtl. Prot.</u>, No. 1:02CV191, 2005 U.S. Dist. 15463, at *2-5 (N.D. W.Va, Jan. 18, 2005) (denying the plaintiff's motion for leave to amend the complaint on grounds of futility), *aff'd*, 139 Fed. Appx. 564 (4th Cir. 2005). Accordingly, the undersigned RECOMMENDS that Plaintiff's motion to amend (DE-16) be DENIED.

## B. <u>Defendants' Motions for Sanctions (DE-19, DE-21, DE-45, DE-49)</u>

The State Defendants request the Court enter a pre-filing injunction against Plaintiff. Defendants note that the current lawsuit represents the seventh action that Plaintiff has filed in the Eastern District of North Carolina in the past eleven years. Plaintiff has also instituted at least five actions in state court. These actions invariably name as defendants--either singly or in combination--the United States, the State of North Carolina, Pender County, and other various government agencies or officials. None has been successful. Of the actions filed with this Court, three were dismissed for failure to state a claim. <u>Sullivan v. United States Environmental Protection Agency</u>, No. 7:02-CV-187-F (E.D.N.C. Apr. 29, 2003); <u>Sullivan v. United States</u>, No. 7:03-CV-22-F

(E.D.N.C. Aug. 6, 2003); <u>Sullivan v. United States</u>, No. 7:03-CV-39-F (E.D.N.C. Apr. 15, 2003). One was dismissed as frivolous. <u>Sullivan v. United States</u>, No. 7:04-CV-103-FL (E.D.N.C. July 7, 2004). In her order dismissing Plaintiff's action as frivolous, Judge Flanagan declined to impose Rule 11 sanctions but "warned [Plaintiff] about his litigation conduct," noting that if Plaintiff filed other frivolous lawsuits, the Court would "consider monetary sanctions and restrictions on his right to file." *Id.* at 8-9. Judge Flanagan further advised Plaintiff "to consult with an attorney and carefully consider that attorney's professional advice before filing any other action in this court." *Id.* at 9.

The Court maintains the authority under the All Writs Act, 28 U.S.C. § 1651, "to limit access to the courts by vexatious and repetitive litigants." <u>Cromer v. Kraft Foods N. Am. Inc.</u>, 390 F.3d 812, 817 (4th Cir. 2004). This remedy must be used sparingly, and access to the court should not be limited absent exigent circumstances. *Id.* at 817-18. "In determining whether a pre-filing injunction is substantively warranted," this Court is required to

> weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* at 818. The court must narrowly tailor any injunction to fit the specific circumstances justifying the injunction. Before issuing a pre-filing injunction, the court must give the individual to be enjoined notice and an opportunity to be heard. <u>Cromer</u>, 390 F.3d at 819.

20

This requires the court to ensure that the individual has the opportunity to oppose the court's order before it is imposed. *Id.* (citing <u>Brow v. Farrelly</u>, 994 F.2d 1027, 1038 (3d Cir. 1993)).

In the instant case, Plaintiff has filed in this Court numerous repetitive lawsuits against government officials, none of which has been found to be meritorious. All have been filed pro se, and all but one have been dismissed at the pleading stage. None has been reversed on appeal. The Court has specifically cautioned Plaintiff about his litigation conduct and advised him to seek professional advice before filing future actions. Plaintiff's repeated filing of meritless actions against the federal and state government and officials, most of whom are immune to suit, needlessly burdens all involved.

The undersigned believes that a narrowly tailored pre-filing injunction is warranted to prevent future meritless complaints filed by Plaintiff. The undersigned therefore RECOMMENDS that the Court grant the State Defendants' motions for sanctions as follows: When initiating any future actions in this Court against the federal or state government, their agencies, or officials, Plaintiff must attach to his complaint an affidavit signed by a duly licensed attorney admitted to practice law in the State of North Carolina averring that the attorney has reviewed the complaint in its entirety and, upon review, has a good-faith belief that (1) the proposed complaint states a claim upon which relief may be granted, (2) is not barred by issue or claim preclusion, and (3) is not repetitive of prior lawsuits filed by Plaintiff with this Court. The pre-filing injunction would not prevent Plaintiff from defending himself in a lawsuit, nor would it apply to complaints filed against

non-governmental, private individuals or entities.

C. **Other Motions**

The undersigned has considered Plaintiff's remaining motions and finds them to be without merit.   Plaintiff's motion for sanctions (DE-17), motions to stay (DE-20, DE-24), motion for writ of mandamus (DE-30), motion for hearing (DE-46), and motions for arrest warrants (DE-50, DE-52) are therefore DENIED.   In light of denial of Plaintiff's motions, Defendants' motions to strike (DE-18, DE-25, DE-31, DE-34, DE-40, DE-51, DE-53) Plaintiff's motions are DENIED AS MOOT.

V.     **CONCLUSION**

For the aforementioned reasons, the undersigned RECOMMENDS that the motions to dismiss (DE-7, DE-13) be GRANTED.     Alternatively, the undersigned RECOMMENDS that the motion for judgment on the pleadings (DE-42) be GRANTED. The undersigned further RECOMMENDS that Plaintiff's motion to amend the complaint

(DE-16) be DENIED as futile, and that a pre-filing injunction be entered against him. Accordingly, the undersigned RECOMMENDS that the motions for sanctions (DE-19, DE-21, DE-45, DE-48) be GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for sanctions (DE-17), motions to stay (DE-20, DE-24), motion for writ of mandamus (DE-30), motion for hearing (DE-46), and motions for arrest warrants (DE-50, DE-52) are DENIED. Defendants' motions to strike (DE-18, DE-25, DE-31, DE-34, DE-40, DE-51, DE-53) are DENIED AS MOOT.

SO RECOMMENDED, DONE AND ORDERED in Chambers at Raleigh, North Carolina on Monday, July 2nd, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE